# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT COPELAND,<br><br>                    Plaintiff,<br>vs.<br>LEHMAN BROTHERS BANK, FSB;<br>MONEYWORLD SALES/<br>MORTGAGES, INC.; AURORA LOAN<br>SERVICES, INC.; and all other claimants<br>of whatsoever kind and character against<br>real property commonly known as 7066<br>Keighley Street, San Diego, CA 92120;<br>APN 672-390-01-00; and DOES 1<br>through 100, inclusive,<br><br>                    Defendants. | CASE NO. 09cv1774-WQH-RBB<br><br>ORDER |

HAYES, Judge:

The matters before the Court are the Motion to Dismiss the Second Amended Complaint, filed by Defendants Lehman Brothers Bank, FSB ("Lehman") and Aurora Loan Services, Inc. ("Aurora") (collectively, "moving Defendants") (ECF No. 42), and the Ex Parte Motion for Leave to File an Opposition to Motion to Dismiss in Excess of 25 Pages (ECF No. 43).

**I.    Background**

On August 14, 2009, Plaintiff Scott Copeland initiated this action by filing a Complaint in this Court. (ECF No. 1).

On December 23, 2009, the Court granted Lehman and Aurora's motion to dismiss, and

1    dismissed the Complaint without prejudice. (ECF No. 11).

2        On April 20, 2010, Plaintiff filed the First Amended Complaint. (ECF No. 26).

3        On July 15, 2010, the Court granted Lehman and Aurora's subsequent motion to
4    dismiss, and dismissed the First Amended Complaint without prejudice. (ECF No. 35).

5        On October 4, 2010, Plaintiff filed the Second Amended Complaint. (ECF No. 41).

6    **A.  Allegations of the Second Amended Complaint**

7        Plaintiff is the owner of real property commonly known as 7066 Keighley Street, San
8    Diego, CA 92120. On June 14, 2007, "[a]t the request of" Defendant Moneyworld
9    Sales/Mortgages, Inc. ("Moneyworld") and Lehman, Plaintiff obtained a loan from Lehman.
10   *Id.* ¶ 14. "The loan was initially funded by Lehman ..., serviced by [Aurora] (Lehman['s] ...
11   subsidiary), brokered by Moneyworld (Lehman['s] ... agent/correspondent/wholesaler), and
12   promptly sold at a profit to other investors currently unknown to Plaintiff." *Id.* Prior to the
13   funding of the loan, Moneyworld and/or Lehman misrepresented the terms of the loan.
14   "Defendants failed to provide Plaintiff with the proper disclosures required under state and
15   federal law." *Id.* ¶ 17. At the time the loan was executed, "Defendants" engaged in "predatory
16   lending behavior," including "[c]reating the loan with a high APR," "[c]harging improper
17   broker fees," "[c]harging excessive prepayment penalties," and "[r]ushing the loan closing."
18   *Id.* ¶ 21. The loan contract "was incomprehensible to a standard consumer." *Id.* ¶ 22.
19   "Defendants Lehman ..., [Aurora] and other Defendants received a Qualified Written Request
20   regarding the loan from Plaintiff and failed to adequately respond to Plaintiff's requests for
21   information, which would have enabled Plaintiff an opportunity to work out the loan." *Id.* ¶
22   18.

23       The Second Amended Complaint alleges eight claims: (1) violation of the Real Estate
24   Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*; (2) violation of the Truth in
25   Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*; (3) violation of California's Unfair
26   Competition Law, Cal. Bus. & Prof. Code § 17200; (4) negligent misrepresentation; (5) fraud;
27   (6) rescission; (7) quasi-contract; and (8) "determination of validity of lien" (ECF No. 41 at
28   28).

**B.     Motion to Dismiss**

On October 13, 2010, the moving Defendants filed the Motion to Dismiss, seeking the dismissal of all claims against the moving Defendants in the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 42). The moving Defendants contend that the Second Amended Complaint "continues to assert time-barred TILA claims and non-actionable [Qualified Written Request] violations under RESPA." (ECF No. 42-1 at 24). The moving Defendants contend that the Second Amended Complaint should be dismissed with prejudice as to the moving Defendants.

On November 8, 2010, Plaintiff filed a response in opposition to the Motion to Dismiss and the Ex Parte Motion for Leave to File an Opposition to Motion to Dismiss in Excess of 25 Pages. (ECF Nos. 43-44). Plaintiff contends that the Motion to Dismiss should be denied in its entirety, or, alternatively, Plaintiff should be granted leave to amend the Second Amended Complaint.

On November 8, 2010, the moving Defendants filed a reply brief in support of the Motion to Dismiss. (ECF No. 45). The moving Defendants did not file an opposition to Plaintiff's Ex Parte Motion for Leave to File an Opposition to Motion to Dismiss in Excess of 25 Pages.

**II.     Discussion**

**A.     Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009).  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

### B.  Request for Judicial Notice

"A district court ruling on a motion to dismiss may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998) (quotation omitted).  Also, "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Id.* at 706.

The moving Defendants request that the Court take judicial notice of the documents executed by Plaintiff and relating to the property at issue, including the Deed of Trust and the Adjustable Rate Note, and the correspondence related to Plaintiff's Qualified Written Request to Aurora made pursuant to RESPA.  (ECF No. 42-2).  Plaintiff does not oppose the request for judicial notice.

The Second Amended Complaint either references or necessarily relies upon each of the documents which are attached to the request for judicial notice.  The authenticity of the documents has not been challenged.  Accordingly, the request for judicial notice is granted.

### C.  RESPA Claim

#### 1.  Allegations of the Second Amended Complaint

The Second Amended Complaint alleges that Aurora "failed to adequately respond" to Plaintiff's December 12, 2008 Qualified Written Request ("QWR") in violation of 12 U.S.C.

1  § 2605(e)(2). (ECF No. 41 ¶ 36). The Second Amended Complaint alleges that Aurora "failed
2  to provide the requested information including but not limited to":

> (1) documentation and proof of ownership for all parties currently holding any ownership rights under the note relating to the loan; (2) yield spread premiums or other payments made to any broker, lender or servicer in the course of servicing the loan, or transferring servicing or ownership of the loan; (3) documents evidencing the servicer's acquisition of the loan; (4) pooling and servicing agreements related to the loan; (5) all documents evidencing [Aurora]'s acquisition of the loan.

*Id.* ¶ 39. The Second Amended Complaint alleges that as a result of Aurora's failure to adequately respond to the QWR, Plaintiff sustained damages, and as a result, is entitled to recover both statutory and punitive damages under RESPA.

### 2. Analysis

Section 2605 of RESPA requires that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days ... unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A); *see also* 12 U.S.C. § 2605(e)(2) (describing the action required to be taken in response to a qualified written request). If a loan servicer fails to comply with the provisions of § 2605, a borrower shall be entitled to "any actual damages to the borrower as a result of the failure" and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [§ 2605]." 12 U.S.C. § 2605(f)(1).

#### a. Actual Damages

"Numerous courts have read Section 2605 as requiring a showing of pecuniary damages to state a claim." *Molina v. Wash. Mut. Bank*, No. 09cv894, 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010) (collecting cases); *see also Eronini v. JP Morgan Chase Bank NA*, No. 08-55929, 2010 WL 737841, at *1 (9th Cir. Mar. 3, 2010) ("The district court properly dismissed the action because Eronini suffered no damages as a result of the alleged RESPA violation."). "This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiff can show that a failure to respond or give notice has caused them actual harm."

*Shepherd v. Am. Home Mortg. Servs., Inc.*, No. 09-1916, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) (citation omitted). Courts "have interpreted this requirement liberally." *Yulaeva v. Greenpoint Mortg. Funding, Inc.*, No. 09-1504, 2009 WL 2880393, at *15 (E.D. Cal. Sept. 9, 2009) (plaintiff sufficiently pled actual damages where plaintiff alleged she was required to pay a referral fee prohibited under RESPA).

The Second Amended Complaint alleges that Plaintiff suffered the following damages as a result of Aurora's failure to adequately respond to the QWR:

> a. Fees and charges assessed on the loan by [Aurora];
>
> b. Reduction in credit rating due to improper credit reporting;
>
> c. Legal fees associated with requests for response to QWRs to which Plaintiff is entitled from [Aurora];
>
> d. Attorney's fees and costs associated with this litigation;
>
> e. Emotional distress due to inability to obtain vital information requested from [Aurora], improper credit reporting, and threat of foreclosure, in an amount to be established at trial; and
>
> f. Missed work both due to time required for dealing with servicer and due to stress.

(ECF No. 41 ¶ 42; *see also id.* ¶ 44 ("As a proximate result of the negligent conduct of [Aurora] as herein alleged, Plaintiff sustained damages, including monetary loss, medical expenses, emotional distress, loss of employment, loss of credit, loss of opportunities, and other damages to be determined at trial.")).

Even reading the Second Amended Complaint liberally, Plaintiff fails to plead non-conclusory factual allegations indicating how he was damaged by the alleged failure to fully respond to the QWR. *Cf. Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) ("Allen only offers the conclusory statement that 'damages consist of the loss of plaintiff's home together with his attorney fees.' He has not actually attempted to show that the alleged RESPA violations caused any kind of pecuniary loss (indeed, his loss of property appears to have been caused by his default)."). Plaintiff fails to identify the "[f]ees and charges assessed on the loan" (ECF No. 41 ¶ 42(a)), and Plaintiff fails to indicate how the fees and charges relate to the response to the QWR. Plaintiff fails to indicate how the response to the

1  QWR caused the reduction in his credit rating, and Plaintiff fails to allege damage caused by
2  the reduction in his credit rating. *See Anokhin v. BAC Home Loan Servicing, LP*, No.
3  2:10cv395, 2010 WL 3294367, at *3 (E.D. Cal. Aug. 20, 2010) ("To constitute actual damages
4  [under RESPA for failure to adequately respond to a QWR], the negative credit rating must
5  itself cause damage to the plaintiff as evidenced by, for example, failing to qualify for a home
6  mortgage. Plaintiff's conclusory statement that she suffered negative credit ratings does not
7  itself establish actual damages.") (citation omitted); *Kariguddaiah v. Wells Fargo Bank, N.A.*,
8  No. C-09-5716, 2010 WL 2650492, at *7 (N.D. Cal. July 1, 2010) (same). Plaintiff's
9  allegations of legal fees and the costs related to this suit are insufficient to constitute actual
10 damages under RESPA. *See Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223
11 (E.D. Cal. 2010) ("[S]imply having to file suit [does not] suffice as a harm warranting actual
12 damages. If such were the case, every RESPA suit would inherently have a claim for damages
13 built in."). Plaintiff's allegations of emotional distress fail to indicate how the alleged failure
14 to adequately respond to the QWR caused the distress. *See Lawther v. OneWest Bank*, No. C-
15 10-54, 2010 WL 4936797, at *7 (N.D. Cal. Nov. 30, 2010) (granting motion to dismiss RESPA
16 claim for failure to adequately allege actual damages because "[w]hat remains unexplained ...
17 is how the QWR failure itself is causally connected to the claimed distress of Lawther or his
18 family"). The Court concludes that Plaintiff's RESPA claim for actual damages for failure to
19 respond to the QWR is insufficiently pled.

### b. Statutory Damages

21 To recover statutory damages, a Plaintiff must plead a pattern or practice of
22 noncompliance with RESPA. *See* 12 U.S.C. § 2605(f)(1)(b).

23 The Second Amended Complaint alleges that Plaintiff is entitled to "statutory and
24 punitive damages if possible." (ECF No. 41 ¶ 44). The Second Amended Complaint alleges:

> Plaintiff is informed and believes that [Aurora] established business procedures that are not designed to be responsive to specific QWRs, but only to earn profits for itself and its parent Lehman Brothers from borrowers such as Plaintiff who had entered unwittingly into unaffordable loans. Plaintiff is informed and believes that the business procedures concealed the true relationships between [Aurora], Lehman Brothers, Moneyworld, and the owners of the loan and interfered with Plaintiff's efforts to obtain information about the loan.

*Id.* ¶ 43.

Plaintiff fails to identify the "business procedures that are not designed to be responsive to specific QWRs." *Id.* The Court finds that these allegations are conclusory, and do not plausibly show a pattern and practice of RESPA violations by Defendants. *See Twombly*, 550 U.S. at 555; *cf. Lal*, 680 F. Supp. 2d at 1223 (RESPA claim deficient because "Plaintiffs flatly claim a pattern of noncompliance but state no facts other than the assurance that at trial they will present other customers who also did not receive QWR responses from Defendant."); *Garvey v. Am. Home Mortg. Servicing, Inc.*, No. CV-09-973, 2009 WL 2782128, at *2 (D. Ariz. Aug. 31, 2009) (same). The Court concludes that Plaintiff's RESPA claim for statutory damages for failure to respond to the QWR is insufficiently pled.

The Motion to Dismiss the RESPA claim is granted.

### D. TILA Claim

#### 1. Allegations of the Second Amended Complaint

The Second Amended Complaint alleges that all Defendants violated TILA and related regulations "at the time of origination because, among other things: (a) The interest rate on the note and the Truth-in-Lending disclosure were deceptively presented and not consistent. (b) The APR was not correctly calculated.... (c) The required payments to the lender and broker were not fully disclosed." (ECF No. 41 ¶ 48). The Second Amended Complaint alleges that "[a]ll Defendants have fraudulently concealed facts upon which the existence of Plaintiff's claim for Negligent Misrepresentation is based, and as such, the statute of limitations is tolled as to this Cause of Action." *Id.* ¶ 46.

#### 2. Analysis

The moving Defendants contend that Plaintiff's TILA claims are barred by the statute of limitations.

TILA is intended to protect consumers in credit transactions by requiring "meaningful disclosure of credit terms." 15 U.S.C. § 1601(a). A lender's violation of TILA allows the borrower to seek damages or to rescind a consumer loan secured by the borrower's primary dwelling. A plaintiff's damage claims relating to improper disclosures under TILA are subject

to a one-year statute of limitations, 15 U.S.C. § 1640(e), which runs from the time the loan transaction is consummated. *See King v. State of Cal.*, 784 F.2d 910, 915 (1986); *see also Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (failure to make the required disclosures under TILA occurs at the time the loan documents were signed). The right to rescission under TILA expires three days after the necessary disclosures are provided to the borrower. *See* 15 U.S.C. § 1635(a).

Plaintiff consummated his loan transaction on June 14, 2007. (RJN, Ex. 1, ECF No. 42-2). On the same day, Plaintiff received, and signed, the "Notice of Right to Cancel" and "Truth-in-Lending Statement" disclosures. (RJN, Exs. 8-9, ECF No. 44-2). These constituted the necessary disclosures to trigger the three-day rescission limitations period. *See* 12 C.F.R. § 226.23(a)(3) & n.48; *see also Mandrigues v. World Savings, Inc.*, No. C-07-4497, 2009 WL 160213, at *5 (N.D. Cal. Jan. 20, 2009). This lawsuit was initiated on August 14, 2009. (ECF No. 1). Accordingly, Plaintiff's TILA claims are time-barred, unless the doctrine of equitable tolling applies. *See King*, 784 F.2d at 915.

Equitable tolling of TILA claims may be appropriate "in certain circumstances," and can operate to "suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or non-disclosures that form the basis of the TILA action." *Id.* at 914-15. District courts have discretion to evaluate specific claims of fraudulent concealment and equitable tolling and "to adjust the limitations period accordingly." *Id.* at 915. In order to be entitled to equitable tolling, a plaintiff must establish that "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).

Equitable tolling will not apply when a plaintiff fails to allege facts demonstrating that he could have not discovered the alleged violations by exercising reasonable diligence. *Cf. Meyer*, 342 F.3d at 902-03. In *Meyer*, the Court of Appeals for the Ninth Circuit held that equitable tolling did not apply to the plaintiff's TILA claim:

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The Meyers were in full possession of all information relevant to the discovery of a TILA violation and a § 1640(a) damages claim on the day the loan papers were signed. The Meyers have

>produced no evidence of undisclosed credit terms, or of fraudulent concealment or other action on the part of Ameriquest that prevented the Meyers from discovering their claim.
>
>In the exercise of reasonable diligence the Meyers should have discovered by [the date the loan documents were signed], the acts constituting the alleged violation. The limitation period has run on their claim.

*Meyer*, 342 F.3d at 902; *see also Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (finding that plaintiff was not entitled to equitable tolling of her TILA claim related to the initial loan disclosures because "nothing prevented [plaintiff] from comparing the loan contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements").

The Second Amended Complaint alleges that "the wrongful acts by Moneyworld, Lehman Brothers, and [Aurora] which warrant equitable tolling of the statute of limitations include" the following:

>a. Plaintiff was rushed through signing of the loan documents and was not provided sufficient time to read and review both loan packets prior to signing;
>
>b. Plaintiff was not provided with all required disclosures at origination;
>
>c. Taken as a whole, the loan documents are complicated and misleading to the average consumer, Plaintiff was provided with a large stack of documents to sign, and Moneyworld and/or Lehman Brothers did not highlight terms which could or would drastically change the monthly payment amount;
>
>d. The interest rate and APR calculations do not reflect the true cost of the loan in violation of [TILA regulations]....

(ECF No. 41 ¶ 47; *see also id.* ¶¶ 14, 17, 72). The Second Amended Complaint alleges that "Plaintiff acted diligently in discovering the claims alleged herein in various ways including" the following:

>a. At the time of origination of the loan, Plaintiff's wife of many years was recently deceased from Cancer, and Plaintiff was recovering from surgery, thus Plaintiff was emotionally unable to comprehend the loan documents during his period of mourning;
>
>b. Plaintiff later retained counsel who sent a QWR to [Aurora] requesting documentation on Plaintiff's behalf; however, ALS failed to adequately reply to Plaintiff's QWR;
>
>c. In a good faith effort to lessen the extent of his damage, Plaintiff sought information to negotiate a resolution.

*Id.* ¶ 48.

Although Plaintiff alleges that he "acted diligently," the Second Amended Complaint

fails to allege adequate information regarding the alleged diligence. The Second Amended Complaint alleges that Plaintiff's diligence included the sending of the QWR, but the QWR was mailed on December 12, 2008, *see id.* ¶ 37, almost six months after the limitations period had expired. Plaintiff alleges that he was rushed during closing, the loan documents were confusing, and certain terms were not highlighted to him, but these allegations do not address the issue of why Plaintiff failed to file suit until over two years after the loan transaction and over one year after the statute of limitations expired. Plaintiff's allegation that he was "emotionally unable to comprehend the loan documents," *id.* ¶ 48, is not sufficient to constitute a factual allegation showing that "despite all due diligence, [plaintiff was] unable to obtain vital information bearing on the existence of his claim" within one year of the loan transaction. *Santa Maria*, 202 F.3d at 1178. Plaintiff has failed to allege sufficient facts to show that equitable tolling may be warranted. *See Twombly*, 550 U.S. at 555. The Motion to Dismiss the TILA claims against the moving Defendants is granted.

### E. State Law Claims

The Second Amended Complaint alleges that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331, by virtue of the TILA and RESPA claims. (ECF No. 41 ¶ 11). The Second Amended Complaint alleges that the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. *Id.* ¶ 12. The Second Amended Complaint does not allege that diversity jurisdiction exists.

The federal supplemental jurisdiction statute provides: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original

jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c). Because the Court has dismissed all of the federal law claims against the moving Defendants, the Court declines to exercise supplemental jurisdiction over the state law claims against the moving Defendants pursuant to 28 U.S.C. §1367(c). *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it has original jurisdiction.").

### III.   Conclusion

The Motion to Dismiss is GRANTED. (ECF No. 42). The Ex Parte Motion for Leave to File an Opposition to Motion to Dismiss in Excess of 25 Pages is GRANTED. (ECF No. 43). The Second Amended Complaint is DISMISSED without prejudice as to Defendants Lehman Brothers Bank, FSB and Aurora Loan Services, Inc.

DATED:  January 3, 2011

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge